## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**HEALTH NET, INC.**                                           **CIVIL ACTION**

**VERSUS**

**J. ROBERT WOOLEY,**                                         **NO. 06-845-D-M2**
**COMMISSIONER, ETC., ET AL**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, October 4, 2007.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**HEALTH NET, INC.**                                          **CIVIL ACTION**

**VERSUS**

**J. ROBERT WOOLEY,**                                   **NO. 06-845-D-M2**
**COMMISSIONER, ETC., ET AL**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Affidavit of Gary L. Lewis (R. Doc. 71) relating

to the undersigned's request, in the August 23, 2007 Report and Recommendation (R. Doc.

70), for the Texas Receiver-defendant ("Texas defendant") to file an affidavit with

contemporaneous or reproduced time records supporting the request for a sanction of

$25,000.00 in attorneys' fees against Health Net.   Although Health Net has filed an

objection (R. Doc. 72) to the undersigned's decision to allow the Texas defendant an

opportunity to supplement the attorneys' fees request with time records (and such objection

is presently pending before the district judge), it has not filed an opposition specifically

relating to Gary L. Lewis's affidavit and contesting the number of hours reflected on the

time records submitted with that affidavit.

## FACTS & PROCEDURAL BACKGROUND

The factual and procedural background of this matter has been discussed in detail

in several prior reports.  Because the undersigned's August 23, 2007 report contains the

most specific explanation of the background and applicable law relative to the

determination of monetary sanctions against Health Net and/or its counsel, a copy of that

1

report is attached hereto for ease of reference and labeled Attachment "A".  In that report, the undersigned determined that the most appropriate sanction the Court can impose upon Health Net and/or its counsel, while still achieving the purpose of Fed. R. Civ. P. 11, is a monetary sanction, and the undersigned went on to determine an appropriate attorneys' fees award under the lodestar method relative to the Louisiana and Oklahoma Receiver-defendants.  However, the undersigned found that it could not determine whether the $25,000 attorneys' fees award requested by the Texas defendant was appropriate since that defendant failed to submit any billing records supporting that request.  The undersigned therefore deferred issuing a final report and recommendation relative to any award of sanctions to the Texas defendant until the attorneys' fees request was supplemented with an affidavit and contemporaneous or reproduced time records.

On August 30, 2007, counsel for the Texas defendant, Gary L. Lewis ("Lewis"), filed an Affidavit with the Court, wherein he indicates that he and R. James George, Jr. ("George"), both partners with George & Brothers, LLP in Austin, Texas, have served as counsel for the Texas defendant in this matter.  Lewis attests to the fact that George & Brothers specializes in commercial litigation; that he has billed at a rate of $300.00 per hour in this case; and that George has billed at a rate of $500.00 per hour in this case.  Lewis further attests to the experience both he and George have had in the commercial litigation practice, with Lewis practicing since 1991 and George practicing since 1971.  He also indicates that the rates charged by himself and George are reasonable in the Austin area considering the type of litigation at issue and the experience and qualifications of the attorneys involved.

Finally, Lewis states that, although the Texas defendant has been represented by himself and George on a contingent basis, both attorneys kept contemporaneous time records that have been submitted with his affidavit for the Court's consideration. According to Lewis's affidavit, the time records have been reduced to the extent any time reflected therein should have been charged to the state court action and was mistakenly entered in this action. The billing records reflect that Lewis spent a total of 52.7 hours on this matter between November 3, 2006 and May 18, 2007, while George spent a total of 6.7 hours during that period.[1] Thus, the total amount of attorneys' fees sought by the Texas defendant, based upon the billing records and the proposed reasonable rates of $300.00 and $500.00, is $19,160.00, which is less than the $25,000.00 amount requested in the Texas defendant's original report filed on June 6, 2007 (R. Doc. 61).

## LAW & ANALYSIS

As discussed in the undersigned's August 23, 2007 report, the determination of a reasonable attorneys' fees award involves a two-step process. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). The court must first determine the "lodestar" amount by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This "lodestar" method serves as the initial estimate of a reasonable attorney's fee. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct.

---

[1] As a preliminary matter, the Court notes that all time spent by defense counsel on this matter is deemed associated with the defendants' motions to dismiss (and related briefing) because that is the only responsive pleading and action taken by the defendants since the filing of this suit in November 2006.

3

1541, 79 L.Ed.2d 891 (1984); *Tasch, Inc. v. Unified Staffing & Associates, Inc.*, 2004 WL 1857640 (E.D. La. 2004).[2]

The second step involves the application of twelve (12) factors the Fifth Circuit Court of Appeal applies in determining what amount is warranted, known as the *Johnson* factors. *Tasch*, at *2, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount of money involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

Once the lodestar is computed by multiplying the reasonable number of hours by a reasonable hourly rate, the court may adjust the lodestar upward or downward depending on its analysis of the twelve (12) factors espoused in *Johnson*. *Id.*; *Dodge v. Hunt Petroleum Corp.*, 174 F. Supp.2d 505, 508 (N.D. Tex. 2001)(In light of the *Johnson* factors, the Court may reduce the award resulting from the lodestar calculation if the documentation of the hours worked is inadequate or if the calculation includes hours that were not "reasonably expended").

---

[2] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)(The Court must determine the reasonable number of hours expended in the litigation and the reasonable hourly rate for the participating attorneys. The lodestar is then computed by multiplying the number of hours by the reasonable hourly rate).

**(1)     Reasonable Number of Hours Expended:**

As discussed above, the Texas defendant has now submitted an itemized, contemporaneous billing record which indicates that Lewis spent 52.7 hours working on this case, and George spent 6.7 hours on this case over the course of the six (6) month period from November 3, 2006 (when this suit was filed) to May 18, 2007.  Health Net has not specifically contested the time entries reflected on that billing record, and the undersigned has reviewed the record and finds that it reflects time reasonably expended to defend this suit, such as time expended for review of pleadings and briefs filed by opposing counsel; time spent on a significant amount of legal research; time expended while conferencing with co-counsel and client regarding research, legal strategy, motions, and the Court's reports and rulings; and time spent reviewing and analyzing the Court's reports and rulings. When broken down, the total amount of hours allegedly expended by the Texas defendant's counsel would result in only 8.78 hours (or slightly over one day) per month being spent on this case by Lewis, and 1.1 hours per month being spent on the case by George.  The Court does not find that amount of time to be unreasonable or duplicative, particularly where Health Net has not specifically contested the time entries contained in defense counsel's billing record.  Accordingly, the reasonable number of hours expended for purposes of the lodestar calculation relative to the Texas defendant is 59.4 hours total.

**(2)     Reasonable Hourly Rate:**

Although Lewis indicates in his affidavit that reasonable hourly rates for himself and George are $300.00 and $500.00 respectively based upon the average hourly rates charged in the Austin area for commercial litigation of this type and based upon their experience and qualifications, the undersigned determined, in the August 23, 2007 report,

5

that the relevant "community" to be considered when determining the reasonableness of a requested hourly rate is the community in which the "district court sits regardless of the fact that much of the work must be performed away from the district court's community or that high-priced attorneys come into jurisdictions with much lower market rates." *Tasch, Inc. v. Unified Staffing & Associates, Inc.*, 2004 WL 1857640, *3 (E.D. La. 2004), quoting *Donnell v. United States*, 240 F.2d 682 (D.C.Cir. 1982).  Thus, the fact that a reasonable hourly rate in the Austin market might be $300.00 and $500.00 for Lewis and George respectively is irrelevant to the determination of a reasonable rate in the market in which this Court sits.  The undersigned went on to find, in the August 23, 2007 report, that a $250 hourly rate is more in line with the standard billable rate for partner-level attorneys under Louisiana jurisprudence, than the $350 to $400 hourly rates recommended by the Louisiana and Oklahoma defendants.[3]  Such finding applies equally herein.

---

[3] *See,* August 23, 2007 Report, citing *Speaks v. Kruse*, 2006 WL 3388480 (E.D. La. 2006)($260 per hour awarded in 2006 for an attorney noted to be "exceptionally well qualified and experienced in his chosen area of litigation"); *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004)($225 per hour awarded to partner-level counsel in a settlement of a nationwide collective action brought under the Fair Labor Standards Act); *Sorapuru v. Mitchell*, No. 02-2524, R. Doc. 63 (E.D. La. 2004)(In a Voting Rights Act case, hourly rate of $225 for civil rights attorney with thirty years of experience (and a former federal judge) was denied, and $200 per hour was awarded as reflective of the rate in the Eastern District for very experienced counsel).

*See also, White v. Imperial Adjustment Corp.*, 2005 WL 1578810 (E.D. La. 2005)(Court recognized that, while some of the most skilled and experienced attorneys practicing in the Eastern District might charge $375 to $400 per hour, most of those attorneys customarily charge their highest rates only for trial work, and lower rates may, and indeed should, be charged for routine work requiring less extraordinary skill and experience.  Given that the case did not proceed to trial, the Court awarded $225 per hour, a rate it considered to be "at the top of the range of prevailing rates for lawyers with comparable experience and expertise in litigation of the type" in the New Orleans area at that time); *Downey v. Strain*, 2006 WL 1581234 (E.D.La. 2006)(finding the hourly rate of $225.00 for the trial attorney with twenty-four years experience and the hourly rate of $175.00 for the attorney with thirteen years experience that assisted at trial reasonable); *Johnson v. ChoicePoint Servs., Inc.*, 2004 WL 253460 (E.D.La. 2004)($200 per hour awarded in FCRA case to attorney who had practiced law for 22 years); *United States ex rel Garibaldi v. Orleans Parish Sch. Bd.*, 46 F.Supp.2d 546, 569 (E.D. La. 1999)(In qui tam case, hourly rates of $250, $175, and $150 awarded for attorneys with substantial experience because of the particular difficulty of the case and the lucrative and less risky business the lawyers were precluded from accepting); *Motton v. Lockheed Martin Corp.*, 2003-0962 (La. App. 4 Cir. 2005), 900 So.2d 901 (finding against Lockheed that plaintiff's counsel's hourly rate of $200.00 was not a rate in excess of the community standards and amending to assess additional fees for appellate work at the same

**(3)     Calculation of the Lodestar Figure:**

The calculation of the lodestar figure based upon the total number of hours reasonably expended multiplied by the reasonably hourly rate, as determined by the Court, is:  59.4 hours x $250 per hour = $14,850.00.

**(4)     Adjustment Upward or Downward based upon the *Johnson* factors:**

The Court has already engaged in an extensive analysis of the twelve (12) *Johnson* factors relative to this case in the August 23, 2007 report and determined that an upward adjustment of the lodestar by ten (10) percent is appropriate to account for the time limitations/delays in other related litigation brought about by defense of this litigation and for the undesirability of defending this matter.  When the lodestar amount is adjusted by ten (10) percent, the total amount of attorney's fees to be awarded to the Texas defendant is $16,335.00 ($14,850.00 + $1,485.00 = $16,335.00).   In addition, as discussed in the undersigned's August 23, 2007 report, the Texas defendant also requested $25.00 in costs related to a motion to enroll counsel *pro hac vice* filed on February 1, 2007 (R. Doc. 29). Accordingly, the total award of sanctions to the Texas defendant should be $16,360.00.

---

hourly rate).

## **RECOMMENDATION**

For the above reasons, it is recommended that plaintiff, Health Net, Inc., and/or its counsel be required to pay a total award of $16,360.00 in attorneys' fees and costs to the Texas defendant as a sanction under Fed. R. Civ. P. 11.

Signed in chambers in Baton Rouge, Louisiana, October 4, 2007.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT       ATTACHMENT "A"

MIDDLE DISTRICT OF LOUISIANA

HEALTH NET, INC.                                    CIVIL ACTION

VERSUS

J. ROBERT WOOLEY,                                  NO. 06-845-A-M2
COMMISSIONER, ETC., ET AL

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.   The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, August 23, 2007.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**ATTACHMENT "A"**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**HEALTH NET, INC.**                                      **CIVIL ACTION**

**VERSUS**

**J. ROBERT WOOLEY,**                                **NO. 06-845-A-M2**
**COMMISSIONER, ETC., ET AL**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Reports of the Louisiana, Oklahoma, and Texas Defendants Regarding Award of Attorneys' Fees Pursuant to Rule 11 (R. Docs. 60 and 61).  Plaintiff, Health Net Inc. ("Health Net"), has filed an objection to those reports. (R. Doc. 63).

## FACTS & PROCEDURAL BACKGROUND

On March 21, 2007, the undersigned issued a Report, recommending that the Motions to Dismiss and the Joint Motion for Sanctions filed by the defendants, the Louisiana, Oklahoma and Texas Receivers, should be granted.  (R. Doc. 50).  In the recommendation, the undersigned instructed the parties to do the following with respect to the award of sanctions:

(1)     If the parties agree to the amount of attorneys' fees and costs, Health Net shall pay that amount;

(2)     If the parties do not agree to the amount, the Receiver-defendants shall, within twenty (20) days of the date the district judge signs a ruling adopting this Report and Recommendation, submit to the Court a report setting forth the amount of costs and attorneys' fees incurred in bringing these motions; and

1

> (3) Health Net shall have ten (10) days after the filing of the Receiver-defendants' report to file an opposition.

R. Doc. 50.

On May 17, 2007, the district judge adopted the undersigned's Report and Recommendation and dismissed this case without prejudice to the plaintiff's right to pursue its nullity action on the merits in state court. (R. Doc. 58). The district judge further awarded, as sanctions, all court costs and reasonable attorney's fees associated with the bringing of defendants' motions, with said sanctions to be paid by counsel for Health Net. The parties were ordered to follow the above-quoted procedures set forth in the undersigned's March 21, 2007 report, and the matter was referred to the undersigned for a report and recommendation, should one be necessary, concerning the amount of sanctions. *Id.*

According to the Report filed by the Louisiana and Oklahoma defendants, in an attempt to reach an agreement regarding the amount of attorneys' fees owed by Health Net (and to avoid the necessity of the present report and recommendation), the Louisiana and Oklahoma defendants extended two alternative offers to counsel for Health Net on May 31, 2007. Specifically, the Louisiana and Oklahoma defendants agreed to accept either: (1) $50,000.00 as payment of their reasonable attorneys' fees; or (2) a dismissal of all nullity actions in both state and federal court and a $1.00 nominal payment for attorneys' fees. *See*, Exhibit A to the Louisiana and Oklahoma defendants' present report, May 31, 2007 Correspondence to James Percy. Counsel for Health Net, James Percy, declined those offers via facsimile dated June 5, 2007, and instead requested copies of the Louisiana and Oklahoma contracts/agreements for legal services; the agreements or approvals for the

2

amount or hourly rate of fees; and the statements, invoices, or time sheets reflecting the hours expended by any attorney for whom fees are sought and amounts charged to the defendants so that Health Net could make its own determination of the "costs and attorneys' fees incurred [by the Louisiana and Oklahoma] Receivers in bringing these motions." *See*, Exhibit B to Louisiana and Oklahoma defendants' report, June 5, 2007 facsimile to J. Cullens.  According to Health Net's present objections, although the Texas defendant never proposed any amount that it incurred in legal fees and costs in bringing the Rule 11 and 12 motions, Health Net made a similar request upon the Texas defendant; however, the Texas defendant never responded to that request.[4]

Given that no agreement was reached among the parties as to the amount of reasonable attorneys' fees that should be awarded herein, the defendants timely filed their reports concerning such fees, and Health Net responded with objections.  The Court now considers the parties' respective positions.

## LAW & ANALYSIS

**I.    Court Costs:**

In their report, the Louisiana and Oklahoma defendants indicate that they are not aware of any filing fees or courts costs expended by them in federal court relative to this suit, and they therefore are not seeking recovery of same.  The Texas defendant, on the other hand, indicates that her court costs relative to this litigation amount to $25.00.  Health Net does not contest that figure in its objections, and a review of the record in this matter

---

[4] The Louisiana, Oklahoma and Texas defendants had also previously offered to forgo the pursuit and collection of any sanctions in any court if Health Net would simply dismiss its nullity actions in both state and federal courts; however, Health Net did not respond to that offer in any way.  *See*, Exhibits C & D to Louisiana and Oklahoma defendants' report dated March 27, 2007; Texas defendant's report, p. 2.

indicates that such amount relates to the filing fee for a motion to enroll counsel *pro hac vice* filed by the Texas defendant on February 1, 2007.  (R. Doc. 29.)  Accordingly, the Court should award $25.00 in costs to the Texas defendant.

## II.    Attorney's Fees:

The Louisiana and Oklahoma defendants have retained three (3) law firms to represent them in this matter and in the related litigation regarding the failure of the AmCare HMOs: Moore, Walters, Thompson, Thomas, Papillion, & Cullens, APLC ("Moore, Walters"); Hohmann, Taube & Summers, LLP ("Hohmann, Taube"); and The Morgan Law Firm.  Based upon the time records submitted with their present report, it appears that attorneys J.E. Cullens, Jr.; Edward J. Walters; and S. Layne Lee of Moore, Walters took the "primary role" in defending the Louisiana and Oklahoma defendants in this federal suit, while Guy Hohmann of Hohmann, Taube took a "secondary and consulting role" relative to this suit and Kim Morgan has "not played an active role" in this proceeding.

The Texas defendant has also retained three (3) law firms to represent her interests in this federal litigation and in the underlying litigation regarding the failure of the AmCare HMOs:  McKernan Law Firm; George and Brothers; and Wisner, Nunnally, and Gold ("Wisner, Nunnally").  According to the Texas defendant's report, Jim George and Gary Lewis of George and Brothers and Jerry McKernan of the McKernan Law Firm have taken the "primary roles" in defending the Texas defendant in this federal suit, while Robert Nunnally of Wisner, Nunnally has taken a consulting role in this matter.

All three defendants are requesting reasonable attorneys' fees for the legal services rendered by those attorneys who played the "primary roles" in defending them (their "litigation attorneys") in this litigation from the date Health Net filed this nullity action on

4

November 3, 2006 through the date they filed their present reports, June 6, 2007.  The defendants specifically note that they are not seeking attorneys' fees for legal services rendered by their litigation attorneys relative to the nullity action Health Net filed in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, or for any work performed in the Louisiana First Circuit Court of Appeal or any other state court regarding the underlying AmCare litigation.  Finally, the defendants explain that they are not seeking attorneys' fees for the legal services rendered by other attorneys who advised and consulted with them regarding receivership issues.

The defendants indicate that they retained their litigation attorneys in this matter through contingency fee contracts in connection with the underlying AmCare litigation, and such contracts do not designate an hourly rate per firm or attorney.  Accordingly, the defendants propose that the hourly rate for purposes of determining the reasonable attorneys' fees to be awarded in this matter should be determined based upon the prevailing hourly rate for attorneys defending complex commercial cases like this one in this jurisdiction. Health Net, on the other hand, contends that defendants are not entitled to any attorneys' fees because they cannot prove that they have "paid, incurred, or [have] been billed" for attorneys' fees relative to this suit since their litigation attorneys have been handling the defense of this suit on a contingency fee basis.[5]

The Court's review of relevant jurisprudence, however, indicates that Health Net's argument lacks merit.  The mere fact that defense counsel in this matter was retained

---

[5] Health Net notes that Fed. R. Civ. P. 11(c)(2) only provides for "payment to the movant of some or all of the reasonable attorneys' fees and other expenses *incurred as a direct result* of the violation," and because the defendants have not actually incurred any attorneys' fees in this suit because of the contingency fee agreement, they should not be able to receive "fictitious amounts" of attorneys' fees as if counsel had been billing them for work throughout this litigation.

through a contingency fee agreement does not preclude defendants from being awarded attorneys' fees as a sanction. *See, Mackler Productions, Inc. v. Turtle Bay Apparel* Corp., 153 F.Supp.2d 504 (S.D.N.Y. 2001)(The fact that an aggrieved party incurred no additional attorney's fees as a result of perjury suborned by opposing attorney, which extended and multiplied the proceedings, since aggrieved party had a contingency fee agreement with its attorney, did not negate the necessity or appropriateness of a compensatory sanction against the opposing attorney since there was a strong public interest in ensuring that the opposing attorney's conduct did not threaten the administration of justice and the integrity of the judicial process).[6]

Furthermore, although the Court has considerable discretion in determining the appropriate sanction to impose upon a violating party, the Court does not find that sanctions less severe than an award of monetary sanctions would achieve the deterrent purpose underlying Rule 11 in the present case. The Fifth Circuit Court of Appeals, in

---

[6] *See also, National Lawyers Guild v. Attorney General*, 94 F.R.D. 616 (S.D.N.Y. 1982)(Plaintiff, who prevailed against the government on a motion for Rule 37 sanctions, was entitled to an award of an amount equal to the number of attorney and paralegal hours spent bringing the motion multiplied by a reasonable hourly fee plus expenses, regardless of any private fee arrangement plaintiff might have had with counsel); *Gotro v. R & B Realty Group*, 69 F.3d 1485 (9th Cir. 1995)(Under statute governing procedure after removal, 28 U.S.C. §1447(c), district court's discretion to award attorneys fees "incurred" as a result of removal, when case is remanded to state court, extended to contingent fee cases. Although the district court determined that sanctions were not warranted under Fed. R. Civ. P. 11, it appears that the court would have awarded attorney's fees, despite the contingency fee contract, had an award of fees been warranted); *Monaghan v. SZS 33 Associates, L.P.*, 154 F.R.D. 78 (S.D.N.Y. 1994)(Attorneys' fees awarded as a sanction under Rule 11, despite the fact that the attorneys were handling the case under a contingency fee contract; however, because the attorneys neglected to keep contemporaneous time records because of the contingency fee arrangement, the court reduced the amount of hours expended in the reconstructed time records by 30% in the interest of equity); *Geler v. national Westminster Bank USA*, 145 F.R.D. 25 (S.D.N.Y. 1992)(Attorney's fees awarded under Rule 11, despite contingency fee agreement, because such sanctions are "not primarily aimed at reimbursing the victim for whatever extra funds he was required to expend because of the infraction, but to disciplining the violator who filed papers in court without having made a proper inquiry into the facts or law." The court noted, however, that "the loss to the victim" helps the court in determining what is a "reasonable sanction" in the circumstances of the case; the court required the sanctioned party to reimburse the plaintiffs for all of their expenses and one-third of their attorney's fees).

*Thomas v. Capital Security Services, Inc.* 836 F.2d 866, 878 (5th Cir. 1988), suggested several "less severe alternative(s) to monetary sanctions" for Rule 11 violations, including a "warm friendly discussion" with counsel on the record, a "hard-nosed reprimand in open court," compulsory legal education, and/or requiring the errant attorneys to circulate a court's opinion criticizing their conduct throughout their firm.  The Court of Appeal noted that, whatever the ultimate sanction imposed, the district court should "utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Id.* Considering the multiple efforts made by defense counsel to get Health Net's counsel to dismiss the present nullity action and to avoid monetary sanctions, which Health Net's counsel either declined or to which they completely failed to respond, Health Net continues to pursue this matter on appeal, despite the fact that the relevant statutory law and jurisprudence indicate that its nullity action should have been filed in the state trial court which rendered the judgments being attacked, and that Health Net actually has pending in state court an identical nullity action wherein it can litigate the substantive matters presented in this case, the Court does not find that mere reprimand, discussion, or criticism of Health Net's conduct will deter it from engaging in similar conduct in the future. Accordingly, the Court finds that an award of attorneys' fees is the least severe sanction it can impose, while still achieving the  purpose of Rule 11.[7]

---

[7] *Thomas*, at 877 ("Whether sanctions are viewed as a form of cost-shifting, compensating opposing parties injured by the vexatious or frivolous litigation forbidden by Rule 11, or as a form of punishment imposed on those who violate the rule, the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule").

*See also, Mackler*, at 510 (The policy behind compensatory sanctions indicates that a violator should not escape enforcement of the sanctions simply because of the nature of the fee agreement between the aggrieved party and its counsel.  Compensatory sanctions adjust the scales to compensate a party and its attorney for the "harm," whether its extra time, effort, and/or expense, caused by the violating party's actions).

**(A)     Determining Appropriate Attorneys' Fees Award Under Lodestar Method:**

Since monetary sanctions under Rule 11 are appropriate herein, the Court must next determine the proper amount of such sanctions.   The determination of a reasonable attorneys' fees award involves a two-step process.  *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999).  The court must first determine the "lodestar" amount by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).  This "lodestar" method serves as the initial estimate of a reasonable attorney's fee.  *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Tasch, Inc. v. Unified Staffing & Associates, Inc.*, 2004 WL 1857640 (E.D. La. 2004).[8]

The second step involves the application of twelve (12) factors the Fifth Circuit Court of Appeal applies in determining what amount is warranted, known as the *Johnson* factors. *Tasch*, at *2, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).  Those factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount of money involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability

---

[8] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)(The Court must determine the reasonable number of hours expended in the litigation and the reasonable hourly rate for the participating attorneys.  The lodestar is then computed by multiplying the number of hours by the reasonable hourly rate).

of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

Once the lodestar is computed by multiplying the reasonable number of hours by a reasonable hourly rate, the court may adjust the lodestar upward or downward depending on its analysis of the twelve (12) factors espoused in *Johnson. Id.*; *Dodge v. Hunt Petroleum Corp.*, 174 F. Supp.2d 505, 508 (N.D. Tex. 2001)(In light of the *Johnson* factors, the Court may reduce the award resulting from the lodestar calculation if the documentation of the hours worked is inadequate or if the calculation includes hours that were not "reasonably expended").

### (1)    Reasonable Number of Hours Expended:

The party seeking attorneys' fees must present "adequately documented time records" to the Court for consideration in determining the number of hours expended. *Tasch*, at *5, citing *Watkins v. Fordice*, 7 F.2d 453, 457 (5th Cir. 1993).  As a general rule, all time that is excessive, duplicative, or inadequately documented should be excluded from an award of attorney's fees, and attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards.  *Tasch*, at *5, citing *Raspanti v. United States Dept. of the Army*, 2001 WL 1081375, at *6 (E.D. La. 2001).  When "billing judgment" is lacking, the Court must exclude from the lodestar calculation the hours that were not reasonably expended.  *Tasch*, at *5, citing *Hensley*, 461 U.S. at 434.

In the present case, counsel for the Texas defendant has not offered any billing records or other evidence documenting the number of hours expended in defending this litigation and instead has simply made the conclusory assertion in her report that she is

entitled to at least $25,000.00 in attorney's fees relative to this suit.  As noted above, all attorney time which is "inadequately documented" should be excluded from an award of attorney's fees.   Accordingly, unless the Texas defendant can come forward with documented time records supporting her request for $25,000.00 in fees, her request will be denied.  Furthermore, to the extent any time records produced by the Texas defendant were not contemporaneously kept and are reproduced for purposes of this sanctions determination, the Court may exercise its discretion and reduce the number of hours accordingly.  *See*, *Monaghan*, 154 F.R.D. 78 (where plaintiff's counsel's failure to keep contemporaneous time records because of their contingency fee arrangement did not justify a denial of fees, but the court reduced the amount of hours expended in reconstructed time records by 30%); *Arnold v. Spanierman*, 1994 WL 665030 (S.D.N.Y. 1994)(It is not unusual for a court to reduce a fee award in the range of 30% when the party's time records are such that it is impossible to obtain an exact calculation of the time spent responding to the sanctionable conduct).  Thus, the Texas defendant should be ordered to supplement her prior report by filing an affidavits with contemporaneous or reproduced time records supporting her request for $25,000.00 in attorney's fees.

In contrast, the Louisiana and Oklahoma defendants have produced time sheets for each of the "litigation attorneys" who actively represented them during this litigation.  *See*, Time Sheets for J. Cullens, S. Layne Lee, Guy M. Hohmann, and Edward J. Walters, attached to the Louisiana and Oklahoma defendants' reports as Exhibits G-J respectively. The time devoted by each litigation attorney to the defense of this matter from November 3, 2006 to June 6, 2007, has been itemized by the Louisiana and Oklahoma defendants in their report as follows:  J. Cullens (Exhibit G): 110.3 hours; S. Layne Lee (Exhibit H): 57.8

10

hours; Guy Hohmann (Exhibit I): 10.6 hours; and Edward J. Walters (Exhibit J): 5.8 hours. The Louisiana and Oklahoma defendants submit, based upon such time records, that the total number of attorney hours devoted to the defense of Health Net's nullity action in this Court, which included the filing/taking of sixty (60) separate pleadings/actions, is 184.5 hours. To break down that figure, the Louisiana and Oklahoma defendants note that, on average, twenty-six (26) hours a month (or roughly one-half (½) of a work week for one attorney) has been devoted to this case over the past seven (7) months.

Health Net has not contested the number of hours counsel for the Louisiana and Oklahoma defendants contend they have expended on this case. In fact, instead of contesting the number of hours allegedly expended, Health Net simply argues that the defendants are not entitled to attorneys' fees as a sanction because their counsel was retained through a contingency fee agreement -- an argument which has already been discredited by the Court. Thus, it appears that the number of hours expended by counsel for the Louisiana and Oklahoma defendants is unopposed. Moreover, the Court has reviewed the time sheets submitted by the litigation attorneys for the Louisiana and Oklahoma defendants and finds that the number of hours expended to defend this case since November 2006 is reasonable. It does not appear that the amount of time spent on this case by the various attorneys over the past seven (7) months, whether it be for conducting legal research, reviewing and drafting pleadings, or corresponding with co-counsel and opposing counsel, has been overly excessive or duplicative. Accordingly, the reasonable number of hours expended for purposes of the lodestar calculation relative to the Louisiana and Oklahoma defendants is 184.5 hours.

**(2)       Reasonable Hourly Rate:**

In addition to submitting evidence of the "hours worked" on a case, a party seeking attorney's fees has the burden of establishing the reasonableness of the fees requested and therefore "must produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Tasch,* *3.[9]  For purposes of determining the lodestar, relevant "community" is the one in which the "district court sits regardless of the fact that much of the work must be performed away from the district court's community or that high-priced attorneys come into jurisdictions with much lower market rates."  *Id.*, quoting *Donnell v. United States*, 240 F.2d 682 (D.C.Cir. 1982).

Satisfactory evidence of the reasonableness of an attorney's rate, at a minimum, is more than the affidavit of the attorney performing the work.  *Id.*, citing *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  It must also speak to rates actually billed and paid in similar lawsuits.  *Id.*  Evidence of rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances, and the weight to be given to the opinion evidence is affected by the detail contained in the testimony or evidence on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.  *Id.*, citing *Norman*, at 1299.

---

[9] *See, Blum v. Stenson*, 465 U.S. 886, 896, n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)(Attorneys' fees are to be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience and reputation); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

12

As noted above, in the present case, the litigation attorneys are representing the defendants on a contingency fee basis; thus, they do not have a standard billing rate with respect to this litigation.   Furthermore, counsel from the Moore, Walters firm, which primarily represented the Louisiana and Oklahoma defendants in this matter, "typically represents clients on a contingency fee basis" and therefore does not have a standard billing rate.[10]   In their report, the Louisiana and Oklahoma defendants submit that the team of litigation attorneys who defended them in this action are "well-respected and accomplished attorneys."   In support of that assertion, they have submitted a copy of the curriculum vitae of each of their attorneys to evidence their background, qualifications, and experience.   The Louisiana and Oklahoma defendants also contend that, based upon the size of the underlying judgment against Health Net (nearly $130 million), the importance of this suit to creditors, patients, and health care providers in three states, and the nature of the "offensive and personal attacks made by Health Net against a sitting state court judge, three appointed receivers, and receivership and litigation counsel," the defense of this nullity action was handled personally by the lead attorneys in this case, rather than delegated to associates or paralegals.

As evidence in support of the $350 hourly rate requested by the Louisiana and Oklahoma defendants, they cite two cases out of the Eastern District of Louisiana where partner-level attorneys in commercial litigation cases were awarded $350 to $400 per hour,

---

[10] The other attorney who represented the Louisiana and Oklahoma defendants, Guy Hohmann, practices in Austin, Texas, and does both contingency fee work and hourly fee work.  The Louisiana and Oklahoma defendants contend that his standard billing rate in cases of this type (*i.e.*, commercial litigation) in Austin, Texas is $425.00.   However, that billing rate is not dispositive herein, as Austin is a larger metropolitan area than Baton Rouge and the hourly rate for lodestar purposes is to be based upon the "relevant community in which the district court sits" regardless of whether an attorney from a larger metropolitan area has performed work in a jurisdiction with lower market rates.

*Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 868 (E.D. La. 2007) and *In re ETS*, 447 F.Supp.2d 612, 633 (E.D. La. 2006).  As with the proposed amount of hours expended, Health Net has not presented any opposition to the hourly rate requested by the defendants.  However, even if the requested rate of $350 to $400 per hour is unopposed, the Court nevertheless finds that such rate is slightly elevated, even considering the jurisprudence cited by defendants.  While both of the Eastern District of Louisiana cases cited by defendants indicate that the prevailing market rate for partners in that district is $350 per hour, the Eastern District also recognized a "blended rate" of $250 per hour in *In re ETS* (which blends the prevailing rate for partners with the prevailing rate of $150 per hour for associates) because not all of the work involved in that case should have been performed by the highest level attorneys.  Rather, the Eastern District noted that much of the legal work prior to settlement (or trial) in that case involved tasks such as research, drafting, and document review, which "reasonably should have been performed by associate-level attorneys."  *In re ETS*, at 633; *Turner*, at 869.

While the Court recognizes the significance of this nullity action, considering the size of the underlying judgment against Health Net and the particularized interests of the various parties involved, the Court does not believe all of the work involved in defending this case since November 2006 necessarily had to be performed by the highest level attorneys.  As in *In re ETS*, the Court finds that much of the legal work performed in defending this case involved tasks such as legal research and drafting and review of pleadings, which could have also been performed by associate-level attorneys at a lower billable rate.  Accordingly, the Court finds that the "blended rate" of $250 per hour used by the Eastern District in *ETS*

is more appropriate than the range of $350 to $400 per hour recommended by the defendants.

Moreover, the Court finds that a $250 hourly rate is more in line with the standard billable rate for partner-level attorneys under other Louisiana jurisprudence.  *See, Speaks v. Kruse*, 2006 WL 3388480 (E.D. La. 2006)($260 per hour awarded in 2006 for an attorney noted to be "exceptionally well qualified and experienced in his chosen area of litigation"); *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004)($225 per hour awarded to partner-level counsel in a settlement of a nationwide collective action brought under the Fair Labor Standards Act); *Soraparu v. Mitchell*, No. 02-2524, R. Doc. 63 (E.D. La. 2004)(In a Voting Rights Act case, hourly rate of $225 for civil rights attorney with thirty years of experience (and a former federal judge) was denied, and $200 per hour was awarded as reflective of the rate in the Eastern District for very experienced counsel).[11]

---

[11] *See also, White v. Imperial Adjustment Corp.*, 2005 WL 1578810 (E.D. La. 2005)(Court recognized that, while some of the most skilled and experienced attorneys practicing in the Eastern District might charge $375 to $400 per hour, most of those attorneys customarily charge their highest rates only for trial work, and lower rates may, and indeed should, be charged for routine work requiring less extraordinary skill and experience.  Given that the case did not proceed to trial, the Court awarded $225 per hour, a rate it considered to be "at the top of the range of prevailing rates for lawyers with comparable experience and expertise in litigation of the type" in the New Orleans area at that time); *Downey v. Strain*, 2006 WL 1581234 (E.D.La. 2006)(finding the hourly rate of $225.00 for the trial attorney with twenty-four years experience and the hourly rate of $175.00 for the attorney with thirteen years experience that assisted at trial reasonable); *Johnson v. ChoicePoint Servs., Inc.*, 2004 WL 253460 (E.D.La. 2004)($200 per hour awarded in FCRA case to attorney who had practiced law for 22 years); *United States ex rel Garibaldi v. Orleans Parish Sch. Bd.*, 46 F.Supp.2d 546, 569 (E.D. La. 1999)(In qui tam case, hourly rates of $250, $175, and $150 awarded for attorneys with substantial experience because of the particular difficulty of the case and the lucrative and less risky business the lawyers were precluded from accepting); *Motton v. Lockheed Martin Corp.*, 2003-0962 (La. App. 4 Cir. 2005), 900 So.2d 901 (finding against Lockheed that plaintiff's counsel's hourly rate of $200.00 was not a rate in excess of the community standards and amending to assess additional fees for appellate work at the same hourly rate).

### (3)     Calculation of the Lodestar Figure:

The calculation of the lodestar figure based upon the total number of hours reasonably expended multiplied by the reasonably hourly rate is: 184.5 hours x $250 per hour = $46,125.00.  After calculating the lodestar, the Court may increase or decrease the amount of attorneys' fees based upon the relative weights of the twelve (12) *Johnson* factors discussed above.  *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).  However, the Fifth Circuit has recognized that four (4) of the twelve (12) factors have already been taken into account and are fully reflected in the lodestar amount such that they should not be reconsidered and "double-counted" at this juncture to increase or decrease the lodestar calculation.  Those factors include:  the novelty and complexity of the issues; the skill and experience of counsel; the quality of representation; and the results obtained from the litigation.  *Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir. 1993); *Saizan*, at 800 (The lodestar may not be adjusted due to a *Johnson* factor if the creation of the lodestar amount already took that factor into account, because to do so would be impermissible double counting).

### (1)     The time and labor required:

The Court considered the time and labor involved in defending this case above and determined that the 184.5 hours of time expended by the various litigation attorneys from November 2006 to June 2007 was reasonable and was not overly excessive or duplicative. Thus, this factor does not require adjustment of the lodestar upward or downward.

16

**(2)      The novelty and difficulty of the questions presented:**

The Court does not find the issue presented by the defendant' motion to dismiss, *i.e.*, the appropriate venue for an action seeking to nullify a Louisiana state court judgment, is particularly novel or difficult, given that it was resolved through a basic analysis of the venue provision set forth in La. Code Civ. P. art. 2006 and related jurisprudence.  However, the Court agrees with defendants that, considering the size of the underlying judgment being challenged by Health Net and the serious nature of the allegations Health Net raised herein against a sitting state court judge, three court-appointed receivers, and defense counsel, placing "all of their eggs in one basket" with an argument based solely on La. C.C. P. art. 2006 may not have been the most strategically efficient way to defend this suit.  Put another way, defendants acted appropriately by raising alternative defenses based upon various abstention doctrines in addition to their argument based upon La. C.C.P. art. 2006 so that, if the Court declined to accept their argument based on Art. 2006, the Court could immediately consider other alleged bases for dismissing this matter and thereby reduce the overall time and effort expended on this matter by the Court and counsel.  However, considering that the additional effort, skill, and time spent researching and briefing the alternative bases for dismissal have already been accounted for in the lodestar calculation, the Court does not find that the lodestar amount should be increased on that ground.

**(3)      The skill required to perform the legal service properly:**

The Court also took into account the particular skill and litigation experience of defense counsel above when calculating the reasonable hourly rate.  While the Court agrees that use of partner-level attorneys with extensive litigation experience and legal knowledge was certainly necessary to some extent because of the significance of the

underlying judgment sought to be nullified and the seriousness of the allegations herein, this case did not reach the discovery phase or trial, and many of the tasks performed in this litigation, such as legal research and preliminary drafts of briefs, could have been performed by associate-level attorneys.  Accordingly, the Court does not find that this factor necessarily requires an increase of the lodestar.

> **(4)    The preclusion of other employment by the attorney due to acceptance of the case:**

Defense counsel concedes that their work on this case has not precluded them from taking "other employment;" instead, they argue that their devotion to the defense of this case took "valuable time away" from their efforts devoted to the underlying AmCare litigation which is now primarily pending before the Louisiana First Circuit Court of Appeal. While that may be true, the issue to be considered relative to this *Johnson* factor is whether defense counsel was unable to accept employment or work on other cases because of its representation of the defendants in this matter.   Considering that the litigation at the Louisiana First Circuit and the present litigation are "part and parcel" of defense counsel's overall representation of the defendants related to the AmCare litigation and that defense counsel will receive a portion of any judgment which may be upheld as to AmCare pursuant to its contingency fee arrangement, the Court does not find that this factor weighs in favor of increasing the lodestar.

> **(5)    The customary fee:**

This issue was addressed in calculating the lodestar figure and need not be reconsidered.

**(6)    Whether the fee is fixed or contingent:**

It has been held that a district court may not rely upon a contingency fee agreement to increase or decrease what it determines to be a reasonable attorney's fee. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041 (9th Cir. 2000); *Shipes v. Trinity Industries*, 987 F.2d 311, 323 (5th Cir. 1993)(The contingent nature of a case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing party under traditional fee-shifting provisions). Accordingly, the lodestar calculation should not be adjusted based upon the fact that the litigation attorneys were handling this case based upon a contingency fee contract.

**(7)    Time limitations imposed by client or circumstances:**

Defense counsel concedes that no time limitations *per se* have been imposed upon the litigation attorneys relative to this matter; however, they again contend that this federal litigation has diverted much time and effort away from the pending AmCare appeals at the Louisiana First Circuit and that Health Net's identical nullity action in state court has essentially been stayed pending a final resolution of this federal suit.

While the present suit may not have precluded defense counsel from accepting or working on "other employment," this suit has certainly taken time and effort away from and/or delayed the defense attorneys' work on the state nullity action, in that such matter could not fully proceed until issues relative to the federal nullity action were resolved. Furthermore, although the Court is not aware of the stage of the appeal(s) pending in the Louisiana First Circuit relative to the underlying AmCare litigation and what work, if any, defense counsel could have been performing relative to that appeal and under what deadlines, the Court recognizes that this litigation likely diverted time and effort away from

19

that appeal and conceivably deterred efficient litigation of that appeal.  The Fifth Circuit recognized, when it included this factor among the twelve (12) factors to be considered in adjusting the lodestar, that "priority work which delays a lawyer's other legal work is entitled to some premium."  It was obviously a priority for defense counsel to pursue dismissal of this case so it can proceed forward with defense of the state court nullity action, and given the delays in that proceeding brought about by the defense of this action, this factor weighs in favor of an upward adjustment of the lodestar amount.

### (8)    The amount of money involved and the results obtained:

As noted above, consideration of this factor was subsumed in the lodestar calculation.  Specifically, the Court considered the size and significance of the underlying judgment against Health Net and the seriousness of the allegations against the various parties in determining the reasonable number of hours expended to defend this suit and a reasonable hourly rate for the litigation attorneys.  Thus, this factor need not be reconsidered to enhance the lodestar.

### (9)    The experience, reputation and ability of the attorneys:

This factor has been previously considered in determining a reasonable hourly rate for the attorneys handling this case and need not be reconsidered.

### (10)    The undesirability of the case:

The Court finds that this factor also weighs in favor of an upward adjustment of the lodestar.  It is clear that, from defense counsel's perspective, the defense of this case has been a most unpleasant task.  Not only is defense counsel having to defend the validity of a state court judgment against Health Net that they spent years seeking to obtain, they are also having to defend against disparaging allegations of fraud and ill-practice on their part

and on the part of a sitting state judge and court-appointed receivers.   Beyond the undesirability of the case itself, defense counsel was forced to defend and obtain dismissal of this case from a clearly inappropriate venue.

**(11)   The nature and length of the professional relationship with the client:**

Defendants concede that this *Johnson* factor does not bear on the issue of attorney's fees in this case, and this factor therefore will not be considered.

**(12)   Awards in similar cases:**

Defendants again cite *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D.La. 2007) and *In re ETS*, 447 F.Supp.2d 612 (E.D. La. 2006), as evidence of comparable attorney's fees awards in similar cases.   As noted above, the Court does not find that the $300 to $400 range for partner-level billable rates proposed in *Turner* is applicable in this case and finds that the "blended rate" of $250 per hour set forth in *ETS* is more appropriate for this case, considering that much of the work performed in this litigation (which was still in its early pre-discovery/pre-trial phase) could have been performed by associate-level attorneys who bill at a lower rate.[12]   Accordingly, this factor does not weigh in favor of an upward adjustment of the lodestar amount.

Thus, based upon the Court's analysis, two (2) of the twelve (12) *Johnson* factors weigh in favor of an upward adjustment of the lodestar figure.   Health Net has not even

---

[12] The Court also finds that *Turner* is distinguishable from the present case because it involved a $33 million award of attorneys fees from a common fund in connection with a settlement of $195 million to resolve a class action.  While the underlying judgment in the AmCare litigation may have involved attorney's fees more in that range because of the complexity of the underlying mass litigation against Health Net, the present matter simply involved obtaining the dismissal of a nullity action on procedural grounds.  Accordingly, the Court does not find that it was necessary to have the most experienced partner-level attorneys perform all the tasks in this matter.

addressed the *Johnson* factors in its objections, and the Court does not find that any downward adjustments based upon those factors are necessary.  Accordingly, the Court finds that an upward adjustment of the lodestar by ten (10) percent is appropriate to account for the time limitations/delays in other related litigation brought about by defense of this litigation and for the undesirability of defending this matter.  When the lodestar amount is adjusted by ten (10) percent, the total amount of attorney's fees to be awarded to the Louisiana and Oklahoma defendants is $50,737.50 ($46,125.00 + $4,612.50 = $50,737.50).  Ironically, this figure is nearly identical to the $50,000.00 figure proposed by the Louisiana and Oklahoma defendants to resolve the Rule 11 dispute without further court intervention through correspondence dated May 31, 2007.

## RECOMMENDATION

For the above reasons, it is recommended that plaintiff, Health Net, Inc., be required to pay a total award of $50,737.50 in attorneys' fees to the Louisiana and Oklahoma defendants as a sanction under Fed. R. Civ. P. 11.  It is further recommended that a report and recommendation and final ruling concerning any award of sanctions to the Texas defendant be deferred until the Texas defendant supplements her prior report by filing an affidavit with contemporaneous or reproduced time records supporting her request for attorney's fees.

Signed in chambers in Baton Rouge, Louisiana, August 23, 2007.

**MAGISTRATE JUDGE CHRISTINE NOLAND**